ROBINSON, EXECUTRIX, ET AL., *v.*
PARKER-HANNIFIN CORPORATION ET AL.

(No. 32389—Decided December 5, 1982.)

Court of Common Pleas of
Cuyahoga County.

*Mr. Craig Spangenberg, Mr. Marc S.
Moller* and *Mr. Arthur Rosenberg,* for
plaintiffs Jeanne H. Robinson, Barbara
Huston and Mary Walton.

*Mr. James A. Calhoun,* for plaintiff
Jeanne H. Robinson.

*Mr. Thomas L. Dettelbach, Mr.
Robert J. Valerian* and *Mr. Mack
Reynolds,* for plaintiff Sandra Stevens.

*Mr. E. John Brzytwa,* for plaintiff
Sentinel Insurance Company.

*Mr. Louis Paisley* and *Mr. Allan M.
Bower,* for defendant Parker-Hannifin
Corp.

*Mr. Burt Fulton* and *Mr. Joseph Pappalardo,* for defendant Cessna Aviation
Co.

GEORGE J. McMONAGLE, J. This is a
products liability action. On December 2,
1980, the plaintiffs' decedent, William
Robinson, was the pilot of a Cessna aircraft No. 212 that was en route from
Peachtree City, Georgia, to Mansfield,
Ohio. When it was in the vicinity of
Tazewell, Tennessee, the plane crashed.
The pilot, together with the three
passengers, was killed.

As a result of the deaths and the
destruction of the aircraft, seven lawsuits
were filed in the Cuyahoga County Court
of Common Pleas. Various pretrials were
held and orders were originally entered
providing that all actions be consolidated
for discovery. They were ultimately consolidated for trial, with the issues as to
liability bifurcated from the issues as to
damages.

The plaintiffs contended, among
other things, that the Parker-Hannifin
vacuum pump which had been installed in
the plane by Cessna failed while the plane
was in flight, and that the said pump was

defective and that its failure was a proximate cause of the crash.

The court considered that a principal claim of the plaintiffs with respect to the liability of the defendants, Parker-Hannifin and Cessna, was that the pump was defective when it left the Parker-Hannifin plant and that the aircraft, containing said pump, was also defective when it left the Cessna plant.

Defendants denied all claims of liability by the plaintiffs. In addition, both of the said defendants filed cross-claims against each other. It was the claim of each that if it be found liable to plaintiffs, that such liability was only secondary to that of said other defendant whose liability was primary. Each defendant prayed that in the event a judgment was entered against it, that it should be awarded a judgment against the other. Each also asked for contribution under the Ohio Contribution Among Joint Tortfeasors Act in the event that verdicts and judgments were entered against both.

This Memorandum of Opinion discusses the following subjects which required consideration by the court, to wit:

1. *Do R.C. 2125.01 and 2125.02, sections of the Wrongful Death Act which was adopted on February 5, 1982, apply to the within wrongful death claims?*

The court has determined that the said Wrongful Death Act as so amended should be applied retroactively and, therefore, to the within death claims. A detailed discussion of the basis for this ruling is hereinafter contained.

2. *What procedure should be followed with reference to the Contribution Among Joint Tortfeasors Act, if applicable?*

This act, R.C. 2307.31 and 2307.32, became effective October 1, 1976, and was in effect at the time of the occurrence in question. The procedure for its application herein is outlined in the pretrial order set forth in the Appendix hereto. Specifically, the pretrial order provides that in the event a verdict and

judgment is entered jointly against both said defendants, the jury would not then be discharged but would then have submitted to it for decision the apportioning of said verdict in accordance with the said contribution act.

3. *Contributory negligence or comparative negligence?*

This is a products liability claim based on strict liability in tort. The defense of contributory negligence is not available. Nor, of course, are the provisions of the comparative negligence statute, R.C. 2315.19, effective June 20, 1980, even though the Supreme Court of Ohio held in *Viers* v. *Dunlap* (1982), 1 Ohio St. 3d 173, that this act affected substantive rights and applied only prospectively, that is, to actions arising after June 20, 1980.

4. *Punitive damages.*

Counsel for the plaintiffs contend that an issue as to punitive damages should be submitted to the jury. In Ohio, punitive damages are not recoverable in any case as a matter of right — their allowance is discretionary with the jury after an instruction as to such damages by the court. See *Leichtamer* v. *American Motors Corp.* (1981), 67 Ohio St. 2d 456, at page 471 [21 O.O.3d 285].

Punitive damages may be awarded in Ohio in tort cases involving fraud, malice or insult. Malice may be inferred from the conduct of the defendant. Intentional, reckless, wanton, wilful and gross acts which cause injuries to person or property may be sufficient to evidence that degree of malice required to support an award of punitive damages in tort actions. There must be sufficient evidence of malice, however, before a question of punitive damages may be submitted to the jury. Malice is defined as "a condition of the mind which shows a heart regardless of social duty and fatally bent on mischief, the existence of which is inferred from acts committed or words spoken." In its legal sense, malice means a wrongful act, done intentionally or

either without just cause or excuse or as the result of ill will.

In its legal sense, it does not necessarily signal ill will to a particular individual, but denotes that condition of the mind which is manifested by the intentional doing of a wrongful act without just cause or excuse; hence, the law implies malice where one causes injury to another in an unlawful manner.

It is normally impossible to determine prior to the presentation of all the evidence in a trial whether the issue as to punitive damages should be submitted to the jury. This court in the aforementioned order specified that the issue as to punitive damages would be determined after the evidence had been presented. Such damages are not available in wrongful death actions; they may be available in survivor actions. Here, plaintiffs claimed evidence would be presented of conscious pain and suffering by decedents prior to their deaths.

5. *The applicability of R.C. 2125.01 and 2125.02 as amended.*

This amended wrongful death statute has been the subject of various opinions of trial courts. There has not been a decision as to its retroactivity by the Court of Appeals for Cuyahoga County, nor by the Supreme Court of Ohio. This court has reviewed the opinions of the various other trial courts and concurs with the decision of Judge Robert H. Gorman of the Hamilton County Court of Common Pleas in *McKinney* v. *Kidwell,* No. A-8105711, unreported; the opinion of Judge Max K. Chilcote of the Richland County Court of Common Pleas in *St. John* v. *Morehead,* No. 81-424 C, unreported; that of Judge William S. Mathews of the Hamilton County Court of Common Pleas in *Ottaway* v. *Broerman,* No. A-8009333, unreported; and the decision of Judge Ronald G. Kaufman of the Erie County Court of Common Pleas in *Wright* v. *Conney* (1982), 3 Ohio Misc. 2d 9.

This court is impressed with the dissenting opinion of Chief Justice Celebrezze in the case of *Keaton* v. *Ribbeck* (1979), 58 Ohio St. 2d 443 [12 O.O.3d 375]. In the majority opinion, the court held that loss of society, comfort and companionship of the decedent is not recoverable under the provisions of R.C. 2125.02, as adopted in 1953. The act of 1982, which is the subject matter of this discussion, specifically includes such elements. Every trial court which is called upon to determine whether this new act should be applied retroactively must give thought to what the Supreme Court is likely to rule when the issue some years from now reaches it.

At the September meeting of the Ohio Judicial Conference, Judge John McCormac of the Court of Appeals for Franklin County, Ohio, during his update review of court decisions, stated that it was his opinion that when called upon to decide the question, the Supreme Court would, in fact, hold that this amended act applied retroactively; in that respect, the said statute is one involving remedial law as distinguished from substantive law, and hence, the last paragraph of R.C. 2125.01 specifies that "[t]he same remedy shall apply to any such cause of action now existing * * *." This constitutes a legislative enactment that this remedial provision shall apply to the instant case.

It has been contended that the legislature inadvertently included this paragraph in the amended R.C. 2125.01. Such an inference or assumption cannot be made. A review of the amended R.C. 2125.01 as compared to the prior statute indicates that there are many changes made in it, including changes in the last paragraph thereof. The fact that a retroactive provision had been contained in the original bill as passed by the House of Representatives and does not appear in the statute as finally adopted by the legislature and signed by the Governor is not a basis for a court to nullify the express provisions of the last paragraph of

R.C. 2125.01, but the court is obligated to enforce it. This court is convinced that when the Supreme Court is called upon to decide this question, its decision will be one in accordance with the provisions of this memorandum.

The matters discussed herein and the court's decision as indicated herein were contained in the pretrial order which was journalized and served upon all counsel prior to the day set for trial. A copy of the order is found in the Appendix hereto.

*Order accordingly.*

### Addendum

When these within actions were called for trial on December 6, 1982, extensive further negotiations were carried on, although exhaustive pretrial proceedings had been conducted in an attempt to bring a settlement of the claims. As a result of the further negotiations which were mediated by the court, prior to calling a jury, they resulted in the settlement of all claims by the payment of approximately three million, two hundred thousand dollars and dismissals were filed.

### APPENDIX
### Pretrial Order

It is hereby ordered upon hearing and consideration of the motions for bifurcation heretofore filed herein that:

1. The within cases, which had been heretofore consolidated for discovery and pretrial, etc., are hereby consolidated for trial.

2. The issues as to liability with respect to each case are hereby bifurcated from the issues as to damages.

3. One jury will be empaneled to determine all issues in the cases.

4. In the trial of the liability issues, the verdicts will be a finding that a plaintiff is, or is not, entitled to recover a verdict on her complaint against one or more of the defendants and also, depending on the primary verdicts, a separate verdict on the cross-claim or third-party complaints.

5. Separate damage trials as to each plaintiff will be conducted in the order of their filings. The jury will be instructed in accordance with Revised Code Sections 2125.01 and .02, effective February 5, 1982, as to the factors which may be considered by the jury. If, and as found appropriate by the court, an issue as to punitive damages will be submitted in the damage trials.

6. If pleaded, and as appropriate, the jury, immediately subsequent to the return of the verdict as provided in No. 5, will decide the issues as to contribution among joint tortfeasors.